# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARTHA PACK, ) | |
| ) | |
| Plaintiff, ) | Case No.: 13-cv-8930 |
| ) | |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| ILLINOIS DEPARTMENT OF HEALTHCARE ) | |
| AND FAMILY SERVICES, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Illinois Department of Healthcare and Family Service's motion to dismiss Plaintiff's complaint [9]. For the reasons stated below, the Court grants in part Defendant's motion to dismiss Plaintiff's complaint [9].

**I.     Background[1]**

In May 2007, Defendant Illinois Department of Healthcare and Family Service (IDHFS) hired Plaintiff Martha Pack as an Office Coordinator. Plaintiff's supervisors included Norris Stevenson, the Deputy Administrator; Warren Cottren, a Senior Public Service Administrator; and Elise McWoodson, a Public Service Administrator. During her employment, Plaintiff always received satisfactory, or better, performance evaluations

In November 2011, Plaintiff, a Caucasian, filed a charge with the Illinois Department of Human Rights, alleging racial harassment by Deputy Administrator Norris Stevenson, an African-American. In May 2012, her complaint was withdrawn pursuant to a settlement agreement. Pursuant to the terms of the agreement, Stevenson was directed to communicate with

---

[1] In reviewing the instant motion, the Court accepts as true the facts alleged in Plaintiff's complaint and makes all reasonable inferences in her favor. See, *e.g.*, *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 879 (7th Cir. 2012).

Plaintiff exclusively through her immediate supervisor and the IDHFS was required to assist Plaintiff in acquiring a reassignment outside of the Division of Child Support Services.

According to the complaint, following the settlement agreement, Stevenson began to monitor Plaintiff's activities in the workplace, follow her in and out of the building on numerous occasions, and directly interact with her in violation of the terms of the settlement agreement. Plaintiff alleges that Stevenson's activities caused her to suffer extreme anxiety and panic attacks at work, prompting her to see a psychiatrist for counseling and treatment. According to the complaint, Plaintiff was diagnosed with extreme anxiety, panic disorder, and post-traumatic stress disorder (PTSD), and in August 2012 and December 2012, a doctor recommended that Plaintiff be reassigned due to severe anxiety and panic attacks when in the presence of Stevenson.

On December 20, 2012, Plaintiff underwent a psychological evaluation by a licensed clinical psychiatrist, who determined that Plaintiff's condition caused her to experience apprehension and fears regarding her relationships with co-workers. Following the evaluation, her doctor again recommended that she be transferred. Notwithstanding Plaintiff's requests for reassignment, the complaint alleges that IDHFS failed and refused to engage in any meaningful interaction with Plaintiff, or her psychiatrists, and ignored her continuing requests for reassignment. On December 19, 2012, Plaintiff applied for and subsequently received occupational disability benefits from the State Employees' Retirement System of Illinois.

On December 15, 2013, Plaintiff filed her complaint in this case, alleging violations of the Americans with Disabilities Act of 1990 ("ADA"), Title VII of the Civil Rights Act ("Title VII"), and negligent infliction of emotional distress under Illinois common law. Plaintiff's ADA

claims (Counts I and II) allege that Defendant IDHFS failed to accommodate Plaintiff's disability and retaliated against Plaintiff as a result of her request for a reasonable accommodation; her Title VII claim (Count II) alleges that Defendant retaliated against her for filing a charge of discrimination against Norris Stevenson; and her state law claim (Count IV) alleges that the actions of Stevenson caused Plaintiff to suffer "extreme exacerbation" of her alleged disability.

**II.     Legal Standard**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint, not the merits of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In reviewing a motion to dismiss under Rule 12(b)(6), the Court takes as true all factual allegations in Plaintiff's complaint and draws all reasonable inferences in her favor. *Killingsworth*, 507 F.3d at 618. To survive a Rule 12(b)(6) motion to dismiss, the claim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the * * * claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (ellipsis in original). The Court reads the complaint

and assesses its plausibility as a whole. See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011); *cf. Scott v. City of Chi.*, 195 F.3d 950, 952 (7th Cir. 1999) ("Whether a complaint provides notice, however, is determined by looking at the complaint as a whole.").

## III. Analysis

### A. Failure to Accommodate Under the ADA (Count I)

To establish a violation of the ADA, an employee must show that: 1) she is disabled; 2) she is qualified to perform the essential functions of the job with or without reasonable accommodation; and 3) the employer took adverse action because of her disability or failed to make a reasonable accommodation. *Winsley v. Cook County*, 563 F.3d 598, 603 (7th Cir. 2009). Defendant contends that Plaintiff (i) cannot establish that she is substantially limited in a major life activity and (ii) did not request a reasonable accommodation.

#### 1. "Disability"

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities that substantially limits one or more major life activities * * *; (B) a record of such an impairment; or (C) being regarded as having such an impairment * * *." 42 U.S.C. § 12102(1). Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). The 2008 amendments to the ADA changed the definition of "substantially limits" in at least two key respects: (1) a person with an impairment that substantially limits a major life activity, or a record of one, is disabled, even if the impairment is "transitory and minor" (defined as lasting six months or less); and (2) "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." *Gogos v. AMS Mech.*

*Sys., Inc.,* 737 F.3d 1170, 1172–73 (7th Cir. 2013) (quoting 42 U.S.C. § 12102(4)(D)) (citing 42 U.S.C. § 12102(3)(B); 29 C.F.R. § 1630.2(j)(1)(ix)). The ADA expressly provides that "the definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12101(4)(A).

In her complaint, Plaintiff alleges that she has a disability under the ADA because she has a conflict with one of her supervisors, Stevenson, and that the disability causes her to suffer from anxiety, panic disorder, and post-traumatic stress disorder. However, simply alleging a diagnosed mental condition does not satisfy a plaintiff's pleading standard for an ADA claim. See *Freelain v. Village of Oak Park*, 2014 WL 148739, at *7 (N.D. Ill. Jan. 15, 2014) (dismissing ADA discrimination claim under Rule 12(b)(6) because plaintiff failed to allege that his anxiety was an ADA disability: "[H]aving a medically identifiable impairment is not enough to establish [plaintiff] has a disability under the ADA – the focus is on whether the impairments substantially limit a major life activity, not whether the impairment has a name."). Rather, in analyzing whether a condition meets the ADA definition of a disability, courts look to the duration, impact and severity of the impairment's limitations.

Here, Plaintiff alleges that her mental condition affects her only when she is in the presence of Stevenson. In her response brief, she specifically alleges that "she experienced severe anxiety/panic attacks as a result of her continuing interactions with Stevenson." Pl.'s Resp. at 5. She further alleges that she would be able to complete the same work if reassigned to a different supervisor. In a similar case, the Seventh Circuit explicitly held that if a plaintiff "can do the same job for another supervisor, she can do the job, and does not qualify under the ADA":

> [Plaintiff's] claim amounts to a charge that she is only unable to work if Skorupka is her boss. Aside from the fact that this contradicts her psychotherapist's testimony, whatever [Plaintiff's] problem was with Skorupka, it is not recognized as a disability under the ADA. The major life activity of working is not "substantially limited" if a plaintiff merely cannot work under a certain supervisor because of anxiety and stress related to his review of her job performance.

*Weiler v. Household Finance Corp.*, 101 F. 3d 519, 525 (7th Cir. 1996) (affirming dismissal of ADA claim where employer denied plaintiff's request for a different supervisor to accommodate her depression and anxiety because plaintiff failed to show that she was disabled); see also *Schneiker v. Fortis Insurance Co.*, 200 F.3d 1055, 1062 (7th Cir. 2000) (dismissing ADA claim because plaintiff failed to show that she was disabled where conflict with supervisor triggered her depression but plaintiff could still perform her job under a different supervisor); *Teninty v. Geren*, 776 F. Supp. 2d 725, 742 (N.D. Ill. 2011) (dismissing ADA claim because plaintiff's depression and anxiety stemming from alleged workplace harassment was not an ADA disability: "[A] personality conflict with a supervisor * * * does not establish a disability within the meaning of the disability law, even if it produces anxiety and depression, as such conflicts often do."). The Seventh Circuit has unequivocally stated that "[t]he major life activity of working is not 'substantially limited' if a plaintiff merely cannot work under a certain supervisor." *Weiler*, 101 F.3d at 527. Here, because Plaintiff's complaint alleges that her disability arises only in the presence of a single supervisor, it is not substantially limiting and therefore she has not sufficiently alleged that she is disabled as that term is used in the ADA.

### 2. *Reasonable accommodation*

Under the ADA, an employer must reasonably accommodate the known physical or mental limitations of an otherwise qualified individual with a disability, unless the accommodation would impose an undue hardship on the employer. 42 U.S.C. § 12112(b)(5)(A).

Plaintiff alleges that IDHFS failed to accommodate her request to reassign her to a new supervisor so that she did not need to work with Stevenson.

The ADA does not require IDHFS to transfer Plaintiff to work for a supervisor other than Stevenson, or to transfer Stevenson:

> An employer may be obligated to reassign a disabled employee, but only to vacant positions; an employer is not required to "bump" other employees to create a vacancy so as to be able to reassign the disabled employee. Nor is an employer obligated to create a "new" position for the disabled employee. Furthermore, in order for an employer to be obligated to accommodate an employee by reassigning them to a different position, that accommodation must not impose an "undue hardship" on the employer.

*Gile v. United Airlines, Inc.,* 95 F.3d 492, 499 (7th Cir. 1996) (citations omitted). Plaintiff's solution is that she be allowed to return to work under a different supervisor. But that decision remains with the employer. In essence, Plaintiff seeks to establish the conditions of her employment, most notably, who will supervise her. Nothing in the ADA allows, much less requires, this shift in responsibility. See *Weiler,* 101 F.3d at 526; *Wernick v. Federal Reserve Bank of New York,* 91 F.3d 379, 384 (2d Cir. 1996) (failure to assign employee to work under different supervisor did not violate reasonable accommodation requirement of ADA and Rehabilitation Act; "Indeed, nothing in the law leads us to conclude that in enacting the disability acts, Congress intended to interfere with personnel decisions within an organizational hierarchy. Congress intended simply that disabled persons have the same opportunities available to them as are available to nondisabled persons."). Plaintiff has pleaded herself out of court because her allegations indicate that she only requested, and would only accept, one accommodation—to work under a new supervisor—which courts have repeatedly held is not a reasonable request. See, *e.g., Bradford v. City of Chicago*, 2005 WL 103058, at *2-3 (7th Cir. Jan. 12, 2005)

(affirming dismissal of ADA claim alleging that employer denied plaintiff's request for transfer away from co-workers, where plaintiff alleged that they exacerbated his bipolar disorder: "[A] transfer away from particular supervisors or co-workers is not required as a reasonable accommodation under the ADA."); *Weiler*, 101 F.3d at 526; *Scott v. Kaneland Community Unit School Dist. No. 302*, 898 F. Supp. 2d 1001, 1008 (N.D. Ill. 2012) ("The Seventh Circuit has indicated that in a situation when 'the plaintiff allege[s] that working with a particular supervisor caused h[im] stress, which in turn led to [disorders] * * * and disabling depression and anxiety, * * * an accommodation to be assigned to work with a different supervisor' is not a reasonable accommodation."); *Poff v. Rockford Public School District #205*, 2009 WL 48344, *5 (N.D. Ill. Feb. 25, 2009) (dismissing ADA claim where plaintiff requested to work under different supervisor because such a request is not reasonable: "If working under [current supervisor] was the only thing preventing plaintiff from returning to work, then she does not have a disability for purposes of the ADA. Moreover, even if plaintiff is considered disabled, she is not entitled to change the conditions of her employment by demanding a different supervisor.").

### B. ADA Retaliation (Count II)

The fact that Plaintiff has not sufficiently alleged a disability under the ADA is not fatal to her retaliation claim. 42 U.S.C. § 12203(a); *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 690 (7th Cir. 2010); *Squibb v. Mem'l Med. Ctr.,* 497 F.3d 775, 786 (7th Cir. 2007). "The Act prohibits an employer from retaliating against an employee who has raised an ADA claim, whether or not that employee ultimately succeeds on the merits of that claim." *Squibb,* 497 F.3d at 786. To state a claim for retaliation under the ADA, Plaintiff must (1) she engaged in a statutorily protected activity, (2) the retaliator was aware of the protected activity, (3) she suffered an adverse employment action, and (4) a causal connection exists between the protected

activity and the adverse action. *Id.*

Plaintiff alleges that Defendant retaliated against her after she requested a transfer to a new supervisor by denying her request for that accommodation. See Compl. at ¶ 35-36. First, Plaintiff alleges that defendants retaliated against her by requiring her to remain in the same work environment—in other words, by denying her requested accommodation. Second, Plaintiff alleges that Defendant retaliated against her by failing to identify positions to which she could transfer and failing to reassign her—again, by denying her requested accommodation. These allegations are insufficient to serve as an adverse employment action for an ADA retaliation claim because they merely restate Count I. See *Imbody v. C&R Plating Corp.*, 2009 WL 196251, at *4 (N.D. Ind. Jan. 23, 2009) (dismissing ADA retaliation claim under Rule 12(b)(6) because it was based upon the same conduct as failure to accommodate claim and "the mere denial of the accommodation claimed to violate the substantive anti-discrimination provisions of the ADA simply cannot support a retaliation claim"); *Pagliaroni v. Daimler Chrysler Corp.*, 2006 WL 2668157, at *9 (E.D. Wis. Sept. 15, 2006) (ADA retaliation claim not allowed to proceed based on employer's failure to accommodate because such a claim would provide "redundant relief" to the ADA's substantive provisions). Plaintiff does not respond to Defendant's arguments or cases on this point. Therefore, Plaintiff's ADA retaliation claim is dismissed as duplicative of Count I.

### C. Title VII Retaliation (Count III)

Plaintiff also alleged that IDHFS violated Title VII's anti-retaliation provisions. Title VII provides that an employer may not "discharge any individual * * * because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1). A Title VII retaliation

claim requires that the plaintiff show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse action by her employer; and (3) there is a causal link between her protected expression and the adverse action. *McKenzie v. Illinois Dep't of Transportation,* 92 F.3d 473, 483 (7th Cir. 1996). A plaintiff can prove the "causal link" by demonstrating that her employer would not have acted adversely "but for" the protected expression. *Id.*

Plaintiff alleges that IDHFS retaliated against her by denying her requests for reasonable accommodation. In other words, Plaintiff alleges that she was subjected to adverse employment actions when IDHFS repeatedly denied her requests to be assigned to a different supervisor, compelled her to apply for disability benefits, and denied her "all prospective employment opportunities without justification of any kind." Compl. at ¶ ¶ 42-43. However, as set forth above, Plaintiff's claim that IDHFS retaliated against her by denying her request for an accommodation is insufficient to serve as a stand-alone retaliation claim because these allegations merely restate Count I. Further, Defendant had no legal obligation to allow Plaintiff to control the assignment of her supervisor and therefore Defendant's refusal to assign Plaintiff to a new supervisor does not constitute an adverse employment action. Finally, Plaintiff's allegations with respect to her disability benefits and "all prospective employment opportunities" are conclusory and vague. At best, what can be gleaned from the pleadings is that Plaintiff applied for and received a work-related benefit. Plaintiff does not allege how Defendant forced her to apply for this benefit and further does not allege how applying for and receiving this benefit is adverse to her. See *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004) ("An adverse employment action must be materially adverse.").

It is clear from Plaintiff's complaint that, following the settlement agreement entered into between the parties in May 2012 (after Plaintiff's first EEOC charge), things did not go as

Plaintiff anticipated. If Plaintiff was forced to continue to work directly under Stevenson, or if Stevenson directly communicated with Plaintiff instead of through her immediate supervisor, or if IDHFS failed to assist Plaintiff in acquiring a reassignment outside of the Division of Child Support Services, then Plaintiff may have a claim for breach of the May 2012 settlement agreement. However, Plaintiff has not asserted a breach of contract claim in this lawsuit. Moreover, to the extent that she is attempting to allege constructive discharge or hostile work environment—claims hinted at in her response brief—those claims also have not been pled (and perhaps not administratively exhausted). In short, it appears that the May 2012 settlement between the parties should have resolved the issues that Plaintiff now seeks to adjudicate: namely, her working relationship with Deputy Stevenson. If IDHFS did not hold up its end of that bargain, it may be that Plaintiff has a sufficient factual basis to assert a claim for breach of the May 2012 settlement agreement, but, for the reasons stated above, she does not have an ADA claim. Further, merely asserting additional, vague theories in a response brief will not suffice. See *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Comp.,* 631 F.3d 436, 448 (7th Cir. 2011) (noting that a plaintiff may not amend his complaint through the filing of a response brief); *Help At Home Inc. v. Medical Capital, L.L.C.,* 260 F.3d 748, 752 (7th Cir. 2001).

        **D.**      **Negligent Infliction of Emotional Distress (State Law Claim)**

Because the Court grants Defendant's motion to dismiss as to the three federal claims (Counts I-III) over which it has original jurisdiction, it must now address whether to retain jurisdiction over the remaining state law claim for negligent infliction of emotional distress ("NIED"). See 28 U.S.C. § 1367(c)(3). The Seventh Circuit consistently has stated that "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state

supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999); *Alonzi v. Budget Constr. Co.*, 55 F.3d 331, 334 (7th Cir. 1995); *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir. 1993). Finding no justification for departing from that "usual practice" in this case,[2] Plaintiff's NIED claim will be dismissed without prejudice if Plaintiff does not file an amended complaint that sufficiently alleges a federal claim. See *In re Repository Technologies, Inc.*, 601 F.3d 710, 724-25 (7th Cir. 2010); *Leister v. Dovetail, Inc.*, 546 F.3d 875, 882 (7th Cir. 2008) ("When the federal claim in a case drops out before trial, the presumption is that the district judge will relinquish jurisdiction over any supplemental claim to the state courts."); *Firth v. Chupp*, 2010 WL 5439759, at *2-3 (N.D. Ind. Dec. 27, 2010) (finding that factors of judicial economy, convenience, fairness, and comity "weigh in favor of remand").

## IV. Conclusion

For these reasons, the Court grants in part Defendant IDHFS's motion to dismiss Plaintiff's complaint [9] and dismisses Plaintiff's ADA and Title VII claims against IDHFS. The dismissal is without prejudice at this time. Plaintiff is given 21 days to replead if she believes that she can cure the deficiencies identified above, consistent with the case law as well as counsel's obligations under Federal Rule of Civil Procedure 11(b). Should Plaintiff choose not

---

[2] In *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251-53 (7th Cir. 1994), the Seventh Circuit noted that there occasionally are "unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point to a federal decision of the state-law claims on the merits." The first example that the Court discussed occurs "when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court." *Id.* at 1251. That concern is not present here, however, because Illinois law gives Plaintiff one year from the dismissal on jurisdictional grounds of state law claims in federal court in which to re-file those claims in state court. See 735 ILCS 5/13-217; *Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008). Dismissal without prejudice also is appropriate here because substantial judicial resources have not been committed to the state law counts of Plaintiff's complaint. *Wright*, 29 F.3d at 1251.

to replead or be unable to cure the deficiencies, Plaintiff's NIED claim[3] will be dismissed without prejudice with leave to re-file in state court.

Dated: July 25, 2014    _____

Robert M. Dow, Jr.

United States District Judge

---

[3] Defendant argues that sovereign immunity bars Plaintiff's NIED claim against IDHFS. Defendant is correct as to a claim for damages. A suit against IDHFS is the equivalent of a suit against the state for immunity purposes. The Eleventh Amendment prohibits a federal court from adjudicating state law claims against the state and its agencies where, as here, it does not consent. See, *e.g., Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984); *Scott v. O'Grady,* 975 F.2d 366, 369 (7th Cir. 1992) ("All suits against a state or its agencies are barred by the Eleventh Amendment unless the state consents to suit in federal court or Congress uses its powers under the Fourteenth Amendment to abrogate the state's Eleventh Amendment immunity."); *Offor v. Ill. Dep't of Human Services*, 2013 WL 170000, at *4 (N.D. Ill. Jan. 16, 2013) (granting state agency's 12(b)(6) motion to dismiss intentional infliction of emotional distress claim because claim barred by sovereign immunity); *Lowe v. Cook County Circuit Court Clerk,* 2000 WL 1372860, at *5 (N.D. Ill. Sept. 22, 2000) (claims for breach of contract and intentional infliction of emotional distress against Illinois state agency dismissed based on doctrine of sovereign immunity); 745 ILCS 5/1 ("* * * the state of Illinois shall not be made a defendant or party in any court"); 745 ILCS 5/1.5 (excluding negligent infliction of emotional distress claim from list of exceptions to Illinois' immunity from suit). However, there is no Eleventh Amendment bar to suits for prospective injunctive relief against a state official sued in his or her official capacity. *Ex parte Young,* 209 U.S. 123 (1908); *Bruggeman ex rel. Bruggeman v. Blagojevich,* 324 F.3d 906, 912 (7th Cir. 2003). Thus, should Plaintiff choose to proceed with her NIED claim in state court, she likely could seek only prospective injunctive relief.